UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN NICHOLS, | ) | Case No. 1:03 CV 0565 |
| | ) | |
| Petitioner, | ) | Judge Lesley Brooks Wells |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| MARGARET BRADSHAW, WARDEN, | ) | (Regarding Docket No. 1) |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |
| | ) | |

John Nichols (hereinafter Nichols), a state prisoner, has applied *pro se* for habeas corpus relief under 28 U.S.C. §2254 seeking reversal of his September 13, 1997 conviction and September 19, 1997 life sentence for the August 13, 1996 murder with firearm specification of his nineteen-year-old girlfriend. Nichols, age 36 at the time of the murder, had a wife and children and worked as an assistant manager of a Wal-Mart store, where his girlfriend also worked. The day before her murder, his girlfriend told Nichols that she was leaving him to return to her native Puerto Rico. The day of her murder, she telephoned Nichols' wife around 4:30 p.m. and disclosed his infidelity. Nichols' wife then called him around 5:00 p.m. and related what she was told. Nichols left work and went to his girlfriend's home, and not finding her there went to Remington College in Maple Heights, Ohio, where he knew she attended evening classes. He waited for her to leave class. She left class on a break and climbed into her car. Nichols pulled behind her in his Geo Tracker preventing her from driving out of her parking space. Around 7:00 p.m., he pulled out a gun, smashed the driver's side window and shot nine times. Seven bullets entered his girlfriend's body, thus concluding her life tragically. (See

Respondent's Ex.3, Trial Tr. 29-33, State's opening statement, Docket No. 14). The state appellate court summarized the proceedings in Cuyahoga County Court of Common Pleas as follows:

> In 1996, Nichols was indicted by the Cuyahoga County Grand Jury charging one count of aggravated murder, in violation of R.C. 2903.01, and a separate firearm specification, in violation of R.C. 2941.145. The matter proceeded to a bench trial, and on the third day of trial, a plea agreement was reached wherein the state agreed to amend the indictment from aggravated murder to murder in exchange for Nichols' plea of guilty. Nichols was sentenced [on September 19, 1997][1] to the Mansfield Correctional Institution for 15 years to life on the murder charge and a consecutive three-year term on the firearm specification. His conviction was affirmed by this court in *State v. Nichols* (Mar. 15, 2001), Cuyahoga App. No. 76966.
>
> In a continuing line of appeals, the appellant filed a petition for post-conviction relief with the lower court. The state opposed said petition arguing that the petition was not timely filed, the issues presented were precluded under the doctrine of *res judicata*, and the petition lacked documentary evidence to support the claims presented. The lower court denied said petition and issued Findings of Fact and Conclusions of Law and Judgment Entry. The appellant sought review by the Ohio Supreme Court, which was summarily denied.
>
> On September 24, 2001, the appellant filed a Motion for Reissuance of Findings of Fact, Conclusions of Law, and Judgment Entry, which the lower court denied. Thereafter, the appellant filed a Motion for Relief from Judgment pursuant to Civ. R. 60(A) which was denied.

*State v. Nichols*, 2002 WL 31245553 (Ohio App. 8 Dist.)

On October 3, 2002, Nichols' appeal from the denial of his Civ. R. 60(A) motion was denied. *Id.* His appeal to the Ohio Supreme Court was dismissed. See *State v. Nichols*, 98 Ohio St.3d

---

[1] See Respondent's Ex. 2, Docket No. 14.

3

1461, 783 N.E.2d 520 (Table Feb. 19, 2003). Thereafter on March 28, 2003, Nichols petitioned the district court for writ of habeas corpus pursuant to 28 U.S.C. §2254.

*Timeliness:*

Respondent argues that federal review is barred under the "1-year period of limitation" contained in 28 U.S.C. §2244(d)(1)(A).[2] and calculates that the period began to run on the date Nichols was sentenced, September 19, 1997 plus 30 days to timely appeal pursuant to Ohio App. R. 4. Accordingly, the "1-year period" began to run on October 20, 1997 upon the expiration of time for seeking direct state review. *DiCenzi v. Rose*, 419 F.3d 493, 496 (6th Cir. 2005); *Williams v.*

---

[2] 28 U.S.C. §2244(d) reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

4

*Wilson*, 2005 WL 2175914 (6th Cir. Aug. 9, 2005); *Feenin v. Myers*, 110 Fed. Appx. 669, 671 (6th Cir. 2004).

Respondent maintains that Nichols did not seek judicial review of his conviction until nearly two years later on September 17, 1999 when he returned to the state courts *via* motion for delayed appeal under Ohio App. R. 5(A). This is not quite correct. The record shows that on May 17, 1999 Nichols filed an Ohio R. Crim, P. 32.1 motion to withdraw his guilty plea. Nichols states that this motion was denied (See Respondent's Ex. 4, Notice of Delayed Direct Appeal, at 2, Docket No. 15). In any event, leave to proceed with delayed appeal was granted and Nichols pursued both on appeal and subsequent state post-conviction relief. See *State v. Nichols*, 2001 WL 259222 (Ohio App. 8 Dist. Mar. 15, 2001), appeal not allowed, 92 Ohio St.3d 1442, 751 N.E.2d 481 (Table 2001), denial of post-conviction relief affirmed, 2002 WL 31245553 (Ohio App. 8 Dist. Oct. 3, 2002), appeal not allowed, 98 Ohio St.3d 1461, 783 N.E.2d 520 (Table 2003).

Nichols has not responded to respondent's arguments and may be under the mistaken impression that the "1-year period" of §2244(d)(1)(A) begins with the completion of state judicial proceedings. However once the "1-year period" had expired on October 20, 1998, and this period has fully run, it cannot be revived or retriggered by subsequent state proceedings. See *Vroman v.*

5

*Brigano*, 346 F.3d 598, 602 (6th Cir. 2003); *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001), *cert. denied*, 534 U.S. 905 (2001).[3] As explained in *Searcy*:

> This is a position that we cannot endorse, because it would effectively eviscerate the AEDPA's statute of limitations. Leave to file a late notice of appeal can be sought at any time, even many years after conviction. If the one-year period of limitations did not begin to run until such an application for leave to appeal was denied, the one-year statute of limitations would be meaningless, merely by delaying his application for leave to file a late notice of appeal, a petitioner could indefinitely extend the time for seeking habeas relief. The statute of limitations provision of the AEDPA would thus be effectively eliminated, a clearly unacceptable result.

*Searcy* at 519 (quoting *Raynor v. Dufrain*, 38 F.Supp.2d 896, 898 (S.D.N.Y. 1998)).

The plea withdrawal motion and Civ. R. 60(A) motion were also filed too late to toll the statute. Additionally, Nichols' state post-conviction relief petition under Ohio Rev. Code §2953.21 filed on November 3, 2000 was both filed too late and did not toll the statute. The petition was rejected in part due to untimeliness, and under §2244(d)(2) a state post-conviction or collateral review application must be "properly filed," in order to toll the statute. An untimely application is not "properly filed." See *Artuz v. Bennet*, 531 U.S. 4, 8, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000); *Pace v. DiGuglielmo*, - U.S. -, 125 S.Ct. 1807, 1811-12, 161 L.Ed.2d 667 (2005); *Keenan v. Bagley*, 400 F.3d 417, 420 (6th Cir. 2005); *Williams v. Wilson*, 2005 WL 2175914*3 (6th Cir. Aug. 9, 2005).

---

[3] The debate over the vitality of the statement in *White v. Schotten*, 201 F.3d 743 (6th Cir. 2000), that Ohio App. R. 26(B) proceedings are a continuation of the state direct appeal process, is irrelevant because the court is confronted with a delayed appeal under Ohio App. R. 5(A), and *Searcy* is considered binding precedent with respect to non-26(B) delayed appeals on both sides of the debate. See *Lambert v. Warden, Ross Correctional*, 81 Fed. Appx. 1,7 (6th Cir. Sept. 2, 2003).

6

Nichols has not raised the argument that he is entitled to equitable tolling and he bears the burden of establishing entitlement. See *Griffin v. Rogers*, 308 F.3d 647, 652 (6th Cir. 2002); *McClendon v. Sherman*, 329 F.3d 490, 492 (6th Cir. 2003); *Keenan*, 400 F.3d at 420."[T]he doctrine of equitable tolling allows federal court to toll a statute of limitations when, 'a litigant's failure to meet a legally-motivated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Keenan*, 400 F.3d at 421, quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000). Since Nichols has not raised this doctrine to defend his untimely habeas petition, equitable tolling should be deemed waived. See *Scott v. Collins*, 286 F.3d 923, 927 (6th Cir. 2002). Nonetheless, even assuming Nichols had raised this issue, it fails.

In his federal habeas petition Nichols only relates that appellate counsel ignored him and that it was only after he filed disciplinary proceedings that appellate counsel filed a "boilerplate" brief on Nichols' behalf (Petition at 5- 5a, Docket No. 1). Further, Nichols' *pro se* Ohio App. R. 5(A) application relates only that Nichols had asked trial counsel for help on an appeal and was told that "he had no chance of appealing his case." (Respondent's Ex. 4, Motion for Leave, at 2, Docket No.15). He states that he sought assistance from legal clerks to no avail, so he filed his motion to withdraw plea and application for delayed appeal both *pro se* in 1999. *Id.*

Nichols' statements fail to establish , three of the five factors set out in *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988), for equitable tolling. See *Dunlap v. U.S.*, 250 F.3d 1001, 1008 (6th Cir. 2001); *cert. denied*, 534 U.S. 1057 (2001); *Keenan*, 400 F.3d at 421; *Vroman*, 346 F.3d at

7

604.[4]   He has not shown that he was unaware of the §2244(d) limitation period, that his ignorance of the legal requirement to file his claim was reasonable, or that he was diligent in allowing 19 months to lapse before he moved to withdraw his plea. See *Dixon v. Ohio*, 81 Fed. Appx. 851 (6th Cir. 2003) (petitioner's lack of counsel and 1 month placement in solitary confinement did not excuse lack of diligence in pursuing his claims); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002), *cert. denied*, 538 U.S. 984 (2003) (inmate's lack of legal training, poor education and even illiteracy does not provide reason to toll the statute of limitations). Consequently, Nichols' *pro se* status due to lack of legal assistance does not excuse this untimely petition.

There is, however, one more consideration. The Sixth Circuit in a recent decision in *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005), determined as an issue of first impression that a credible claim of actual innocence will equitably toll the §2244(d) limitations period. *Id.*, at 589-599. Nichols' three grounds are: Petitioner's guilty plea was not entered knowingly, intelligently and voluntary; Petitioner was denied effective assistance of counsel when entering his guilty plea; and Petitioner was denied the effective (*sic*) of counsel on direct appeal.    None of Nichols' arguments demonstrate actual innocence. The common thread to them all is Nichols' claim that the charge should have been reduced to voluntary manslaughter for actions "under the influence of sudden passion or in a sudden fit of rage,

---

[4] In determining whether to allow equitable tolling, the Court must consider the *Andrews* factors: petitioner's lack of notice of the filing requirement; petitioner's lack of constructive knowledge of the filing requirement; diligence in pursuing one's rights; absence of prejudice to the Respondent and the petitioner's reasonableness in remaining ignorant of the legal requirements for filing his claim. *Dunlap*, 250 F.3d at 1008. However, "this list of factors is not necessarily comprehensive, and not all factors are relevant in all cases." *Vroman v. Brigano*, 346 F.3d at 605; *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004), *cert. denied*, 125 S.Ct. 200 (2004).

8

either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force." See Ohio Rev. Code §2903.03. This was certainly an arguable point at the time he entered his plea. Ohio treats extreme emotional distress as a mitigating circumstance which defendant bears the burden of proof by a preponderance of the evidence. See *State v. Rhodes*, 63 Ohio St.3d 613, 590 N.E.2d 261 (1992). Under state precedent from *State v. Pierce*, 64 Ohio St.2d 281, 18 Ohio Op.3d 406, 414 N.E.2d 1038 (1980), a homicide committed following conversations from the preceding night was ruled, as a matter of law, not to be committed under influence of sudden passion. In contrast, in Nichols' circumstance only two hours had passed from the time of the call from his wife, and two-and a- half hours from the time of the girlfriend's call. Nichols could have insisted on going to trial to argue mitigating circumstances of sudden passion or rage for conviction on the lesser included offense of voluntary manslaughter, instead of murder.

Nichols, though, must make a credible showing of actual innocence. *Souter*, at 599. Actual innocence means "factual innocence not mere legal insufficiency." *Bousley v. U.S.*, 523 U.S. 614, 623-24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Untimeliness is excused only, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Souter*, at 599, quoting, *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Nichols does not seek to present new evidence of innocence that was not presented at trial. See *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Rather, he merely rehashes the evidence used to convict him and counsel's advice to enter a plea bargain. Nichols'

9

arguments do not nullify the facts which supported conviction for murder, i.e., purposely causing the death of another, the crime which Nichols stands convicted. See Ohio Rev. Code §2903.02(A). Instead, he is attempting to renegotiate his plea bargain to reduce the penalty associated with a murder conviction to the penalty associated with voluntary manslaughter for the killing of his girlfriend. This is not factual innocence. Nichols' contentions do not even reach legal sufficiency of the evidence, and fail to present a claim of actual innocence. His guilty plea to murder was supported by substantial evidence.

### *CONCLUSION AND RECOMMENDATION*

For the foregoing reasons, the Respondent's defense of untimeliness is supported by the record and this petition filed under 28 U.S.C. §2254 should be dismissed due to untimeliness pursuant to 28 U.S.C. §2244(d).

s/James S. Gallas
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

September 22, 2005